NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted February 23, 2021[*]
Decided February 24, 2021

**Before**

FRANK H. EASTERBROOK, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

THOMAS L. KIRSCH II, *Circuit Judge*

No. 20-1120

| | |
|---|---|
| ROBERT ALEXANDER, *Plaintiff-Appellant*, | Appeal from the United States District Court for the Southern District of Illinois. |
| *v.* | No. 17-cv-545-NJR |
| SHANNON WITHERS, *Respondent-Appellee*. | Nancy J. Rosenstengel, *Chief Judge*. |

**O R D E R**

Robert Alexander, who committed crimes in Georgia while on parole for a federal conviction, challenged the revocation of his parole in a petition under 28 U.S.C. § 2241. The district court dismissed it, and, because Alexander's notice of appeal is untimely, we lack jurisdiction over the appeal.

---

[*] We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

In 1987, Alexander was convicted in federal court of bank robbery and sentenced to 20 years' imprisonment. After being paroled, reincarcerated, and paroled again, he was arrested by Georgia authorities in July 2000 on charges of rape, enticing a child for indecent purposes, and child molestation. The United States Parole Commission issued a warrant to revoke his parole based on the charges. He pleaded guilty to statutory rape and was sentenced to 20 years in Georgia state prison. When he completed the state sentence in February 2012, the Commission executed its revocation warrant.

After a hearing in June 2012, the Commission revoked Alexander's parole, based primarily on information in police reports about the rape; Alexander was represented by counsel and did not testify. The Commission concluded that aggravating factors about the rape and the twelve-year-old victim warranted reimprisoning him until his federal sentence expired. This meant that he would serve approximately 90 more months in prison, more than the recommended 78-100 months under the Parole Commission Guidelines.

After exhausting his administrative appeals, Alexander filed this petition under § 2241 in the Southern District of Illinois (at the time, he was incarcerated at the United States Penitentiary in Marion).[1] He asserted that his attorney had not properly advocated for him at his revocation hearing, and that the Commission exaggerated the severity of his violation, "double counted" the rape conviction, and failed to credit him for good conduct in state custody. After full briefing, the district court rejected these arguments; it denied the petition and entered judgment on November 21, 2019. The district court received Alexander's notice of appeal on January 22, 2020—two days beyond the sixty-day window to appeal. 28 U.S.C. § 2107(b); FED. R. APP. P. 4(a); Rules Governing § 2254 Petitions, Rule 11(b) (applicable to § 2241 through Rule 1(b) (applying FED. R. APP. P. 4(a) to habeas petitions)).

We noted a possible problem with appellate jurisdiction, and the warden submitted several filings contending that it is lacking. One was a notice of mootness based on Alexander's release from a residential re-entry center operated by the Federal Bureau of Prisons in May 2020. But the warden tells us that Alexander, though no

---

[1] Alexander has been released from the warden's custody since filing this case—first to a federal halfway house, and then to supervision by the Commission. Despite this, the warden has continued to defend the appeal, never seeking to substitute the Commission, which appears to be the only entity, if any, from whom Alexander could obtain relief now, and which can be the appropriate respondent to a § 2241 petition. *See, e.g., Evans v. U.S. Parole Comm'n*, 78 F.3d 262, 263 (7th Cir. 1996).

longer in the physical custody of the Bureau, "will continue to be supervised by the Commission," which suggests that his "custody" has not ended. *See Clarke v. United States*, 703 F.3d 1098, 1101 (7th Cir. 2013) (supervised release is "classified as a form of custody" for purposes of habeas corpus). Because we do not have sufficient detail about that or any collateral consequences of Alexander's continued supervision (Alexander's response to the notice merely speculates about the effect of continuing his term to expiration), we cannot resolve whether his case is moot. *See Spencer v. Kemna*, 523 U.S. 1, 7–8 (1998) (equating the incarceration and "the restriction imposed by the terms of the parole"); *Maleng v. Cook*, 490 U.S. 488, 491 (1989) (prisoner is no longer in custody when the sentence has fully expired such that no collateral consequences remain).

We have other grounds for questioning our jurisdiction, however. *See United States v. Ray*, 831 F.3d 431, 440 (7th Cir. 2016) ("there is no priority among the many reasons for *not* deciding a case"). The warden has also pressed the untimeliness of Alexander's notice of appeal. In response to an order to show cause, Alexander invoked the prison-mailbox rule, FED. R. APP. P. 4(c)(1), arguing that, when he sent his notice of appeal, he was living at a re-entry center in Georgia—still in the custody of the Federal Bureau of Prisons and with limited freedom. He also attested that he "had placed his appeal in the United States Mail" on January 17. But the warden submitted records from the center, showing that Alexander's movement was not quite so restricted: He was able to sign out of the center to visit the Salvation Army, work at the local oyster bar, do legal research at a courthouse—and go to the post office.

The date stamp on the envelope that contained the notice of appeal corroborates Alexander's attestation that it was mailed on January 17—which is "on or before the last day of filing" of January 20. FED. R. APP. P. 4(c)(1); *Houston v. Lack*, 487 U.S. 266, 270 (1988). If the prison-mailbox rule applies to Alexander, then, the notice of appeal is timely. But the rule's applicability depends on whether Alexander had to make use of a prison mailbox at all. While courts have extended the prison-mailbox rule to filings made by detainees in non-prison institutions, *see Boatman v. Berreto*, 938 F.3d 1275, 1276–77 (11th Cir. 2019), they cannot benefit from the prison-mailbox rule if their filings are mailed from outside their institutions, *see Knickerbocker v. Artuz*, 271 F.3d 35, 37 (2d Cir. 2001) (mailed by third party).

Alexander bears the burden of proving that he is entitled to the benefit of the rule. *May v. Mahone*, 876 F.3d 896, 899 (7th Cir. 2017). But even if he were "confined" for the purposes of the rule (although he was not "unable to leave" the re-entry house, *Houston*, 487 U.S. at 271), Alexander did not attest that he placed the notice of appeal in a correctional institution's mail system. 28 U.S.C. § 1746; *see* FED. R. APP. P. 4(c)(1)(A).

*See also Ford v. Wilson*, 747 F.3d 944, 948–49 (7th Cir. 2014); *Ray v. Clements*, 700 F.3d 993, 1012 (7th Cir. 2012). To the contrary: He placed the notice in the United States mail. *See Houston,* 487 U.S. at 270–71. He therefore cannot benefit from the rule. And we cannot overlook the absence of a timely notice of appeal, a jurisdictional prerequisite. *See* FED. R. APP. P. 3(a)(2); *Manrique v. United States*, 137 S. Ct. 1266, 1274 (2017) ("defects in a notice of appeal *other* than the failure to timely file a notice" can be excused).

DISMISSED