In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 24-3067

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

MATTHEW CARGO,

*Defendant-Appellant.*

_____

Appeal from the United States District Court for
the Northern District of Illinois, Eastern Division.
No. 1:19-cr-00212-1 — **Matthew F. Kennelly,** *Judge.*

_____

SUBMITTED FEBRUARY 27, 2025 — DECIDED APRIL 18, 2025

_____

Before SCUDDER, PRYOR, and MALDONADO, *Circuit Judges.*

SCUDDER, *Circuit Judge.* Innocent mistakes happen, and federal prisoner Matthew Cargo made an unfortunate one here that leaves us no choice but to dismiss his appeal as untimely. Cargo addressed the envelope containing his notice of appeal this way: "Federal Court/Northern Illinois, 219 S. Street, Room 500, Chicago, Illinois 60604." He had everything right but the street name, as the district court in Chicago is on "S. Dearborn Street"—not "S. Street."

Yet Cargo's being close on the address was not close enough, resulting in the U.S. Postal Service marking the mailing "not deliverable as addressed" and returning it. By the time Cargo learned of and sought to correct his mistake, the appeal window had long expired, owing by his account to his moving prisons and not learning of the error in time to correct it. That leaves Cargo to argue that he got enough right at the time of the original mailing to satisfy the so-called prison-mailbox rule: he gave the notice of appeal mailing to prison officials before the deadline with the clear intent that it reach the district court. On these facts, we cannot agree, for the addressing error mattered and precludes us from concluding that Cargo satisfied the prison-mailbox rule to submit a timely appeal.

# I

Only few additional facts require mention. The district court entered its judgment sentencing Cargo on his federal convictions on July 20, 2020. That gave Cargo fourteen days, or until August 3, 2020, to file a timely notice of appeal. See Fed. R. App. P. 4(b)(1)(A). He may have been able to obtain an extension of that deadline to as late as September 2, 2020. See *id.* 4(b)(4). At the very least, following sentencing and the finality of the criminal case against him, Cargo could have instructed his counsel to file a notice of appeal—a direction counsel would have had to follow. See *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000).

In our court Cargo has submitted a detailed handwritten declaration and supporting evidence telling us the alternative path he tried to follow. By his own account, on July 22, 2020, he was temporarily held in an Oklahoma jail awaiting transfer to the federal prison where he would start serving his

sentence. Early that morning, Cargo says he prepared a notice of appeal and envelope to mail it and gave the envelope to a correctional officer. We can see from a copy of the envelope that it bears a postmark of the same date. Unfortunately, we can also see Cargo's addressing mistake, the postal service's instructions to return the envelope to its sender, and the jail's stamp reflecting that Cargo had already been transferred out by the time the envelope arrived back at the Oklahoma jail. Cargo insists he did not learn of his notice of appeal going undelivered until he finally received the forwarded envelope in early November 2024, at which point he promptly repackaged the notice of appeal—still dated July 22, 2020—in a new, properly addressed envelope that resulted in this appeal.

Seeing that the notice of appeal was postmarked four years after final judgment, the government moved to dismiss it as untimely. Although not jurisdictional, we must enforce this deadline where, as here, the government invokes its protections. See *United States v. Townsend*, 762 F.3d 641, 644 (7th Cir. 2014). Cargo responded with a declaration and memorandum insisting that he satisfied the prison-mailbox rule as established in *Houston v. Lack*, 487 U.S. 266 (1988), and so his appeal should be deemed timely.

## II

The government urges us to reject Cargo's argument because he waited too long to make it—he had made no effort to alert anyone to his attempted appeal these past four years, despite contacting the district court regarding sentence-reduction matters in the meantime. But we have squarely denied the suggestion that a document timely filed under the prison-mailbox rule can be rendered late by the prisoner's lack of diligence in following up on the mailing when it does

not arrive. Put most simply, "a prisoner's lack of diligence cannot operate to unfile a filed document." *Ray v. Clements*, 700 F.3d 993, 1012 (7th Cir. 2012) (citing *Allen v. Culliver*, 471 F.3d 1196, 1198 (11th Cir. 2006)). Remember the very premise of the prison-mailbox rule: a notice of appeal is deemed "filed" when properly tendered to prison officials for mailing to the district court. *Houston*, 487 U.S. at 272. The sole issue before us, then, is whether Cargo complied with the rule on July 22, 2020, regardless of what happened later.

Cargo maintains that all the prison-mailbox rule requires is his tendering the notice to prison officials within the deadline and with the intent that it reach the district court—two requirements he satisfied. In his view, Rule 4(c) and *Houston* specify nothing about the accuracy of the address on the envelope. He is correct that although Rule 4(c) explicitly requires evidence that postage was prepaid, it says nothing about evidence of proper addressing. This explains why we have had no difficulty applying the prison-mailbox rule to a notice of appeal mistakenly addressed to our court (instead of the district court) by operation of Rule 4(d), see *Saxon v. Lashbrook*, 873 F.3d 982, 987 (7th Cir. 2017), and some circuits have extended this principle to mail sent to other incorrect federal courts under 28 U.S.C. § 1631, see, *e.g.*, *Baeta v. Sonchik*, 273 F.3d 1261, 1264 (9th Cir. 2001).

Indeed, Prentiss Houston himself may have wrongly addressed his notice of appeal to the Tennessee Supreme Court, *Houston*, 487 U.S. at 268, yet the Supreme Court did not linger on this possibility when deeming his notice of appeal timely despite its arriving at the federal district court one day late. But the Court also cautioned against reading its opinion to mean that delivery to prison officials alone would suffice. It

emphasized that "delivery of a notice of appeal to prison authorities would not under any theory constitute a 'filing' unless the notice were delivered for forwarding to the district court." *Id.* at 273. So, contrary to Cargo's argument, *Houston* did not deem prison staff the functional equivalent of the clerk of court, such that handing the notice to a guard is necessarily a timely filing in and of itself. See *United States v. Kimberlin*, 898 F.2d 1262, 1265 (7th Cir. 1990).

Unlike these cases, Cargo's notice of appeal never reached the district court (or even some other court) and instead ended up back where it started, at the Oklahoma jail where he tendered it for mailing. An envelope inaccurately or incompletely addressed that somehow, some way arrives at its destination will not be rejected merely because of the addressing imperfection. But a notice of appeal that is, by the prisoner's own mistake, deemed not deliverable as addressed and returned to the sender, has not been delivered for forwarding to the district court within the meaning of *Houston*. In this situation, at least, the address to which the notice of appeal is sent matters as much as the time it is sent.

Several courts have held that a prisoner cannot benefit from the rule when he elects to address his notice of appeal to somewhere besides the court, even if he does so with the intent that the recipient deliver it to the clerk. See *Cook v. Stegall*, 295 F.3d 517, 521 (6th Cir. 2002); *Knickerbocker v. Artuz*, 271 F.3d 35, 37 (2d Cir. 2001); *Dison v. Whitley*, 20 F.3d 185, 187 (5th Cir. 1994); *Wilder v. Chairman of the Cent. Classification Bd.*, 926 F.2d 367, 370 (4th Cir. 1991). We see no difference between a notice of appeal that a prisoner addressed to someone else and one the postal service concludes has been addressed to no one at all. Intent alone is not enough if the prisoner has not

satisfied *Houston*'s critical component—the "filing" with the clerk.

Because Cargo's July 22, 2020 notice of appeal was not mailed in compliance with the prison-mailbox rule, the timeliness of this appeal is instead governed by when he resent his notice of appeal in November 2024. But that came four years late, leaving us no alternative but to dismiss Cargo's appeal as untimely.

We close with an observation worth doubly underscoring: this unfortunate outcome could have been avoided by Cargo instructing his counsel to file a notice of appeal. See *Flores-Ortega*, 528 U.S. at 477. It seems that path would have been much easier than trying to navigate challenges prisoners like Cargo often face with obtaining writing and mailing supplies, finding the right address, doing all of this while moving between institutions, and the like. Relying on counsel should be the norm, not the exception—a message we can only hope district courts will reinforce when advising a criminal defendant of the right to appeal a conviction and sentence.

DISMISSED